UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ADAM M. ELLIOTT,

      **Plaintiff,**

  v.                                 **Civil Action 2:19-cv-3445**
                                          **Judge Edmund A. Sargus, Jr.**
                                          **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

# REPORT AND RECOMMENDATION

      Plaintiff, Adam M. Elliott ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                **I.**      **BACKGROUND**

      Plaintiff filed his application for Title II Social Security Benefits on October 23, 2013, alleging that he had been disabled since March 25, 2013, when he was struck in the head by a horse. (R. 143.) On March 7, 2016, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Jeffrey Hartranft (the "ALJ"). (*Id.* at 29–62.) Plaintiff, represented by counsel, appeared and testified.

Vocational expert Eric Pruitt, M.S. (the "VE"), as well as Plaintiff's wife, Cory Elliott, also appeared and testified at the hearing. On March 31, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 12–23.) On April 28, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced an action in the United States District Court for the Southern District of Ohio (2:17-cv-542). On joint motion of the parties, that action was remanded on January 5, 2018, for further proceedings. (R. 731; Case No. 2:17-cv-542, ECF No. 15.)

A second hearing was held before the same ALJ on April 10, 2019. (R. 615–647.) Plaintiff, represented by counsel, appeared and testified. Plaintiff's counsel stated that Plaintiff had been able to return to work, and requested a closed period of disability from March 25, 2013, to May 31, 2018. (*Id.* at 619.) The same VE also appeared and testified. On April 24, 2019, the ALJ issued a decision finding again that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 589–606.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors (ECF No. 11), Plaintiff raises three contentions of error: (1) that the ALJ failed to properly evaluate the medical opinion evidence of his treating physicians, Steven Simensky, M.D., Jerry Mysiw, M.D., and Steven Curtis, O.D.; (2) that the ALJ failed to properly evaluate the medical opinion evidence of State agency consultative examiner, psychologist James Spindler, M.S.; and (3) that the ALJ failed to consider whether Plaintiff required the use of an assistive device to ambulate.

## II. THE ALJ'S DECISION

On April 24, 2019, the ALJ issued a decision finding again that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 589–606.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff was presumed to have engaged in substantial gainful activity during the period of March 2018 through September 2018, but that there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. (*Id.* at 592.) The ALJ noted that, regardless of whether this work constituted substantial gainful activity, "the disability claim can be decided at another step in the sequential evaluation process as discussed in more detail below." (*Id.*)

At step two, the ALJ found that Plaintiff has the severe impairments of post-concussive syndrome, obesity, depression, and unspecified trauma disorder. (*Id.*) He further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 593–94.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He would also be limited to occasional computer use. He cannot drive commercially or climb ladders, ropes, or scaffolds, and he must avoid excessive noise, defined as anything louder than a typical office environment, excessive vibrations, and workplace hazards, such as unprotected heights and machinery. The claimant can perform simple, routine, and repetitive tasks involving only simple work related decisions and with few if any workplace changes. He can work in positions that do not require strict production quotas or fast paced work, such as on an assembly line. The claimant can occasionally interact with the general public, co-workers, and supervisors, with no customer service, conflict resolution, or supervisory responsibilities.

(*Id.* at 594–95.)

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.* at 605.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

Plaintiff raises three issues in his Statement of Errors (ECF No. 11): (1) that the ALJ failed to properly evaluate the medical opinion evidence of his treating physicians, Steven Simensky, M.D., Jerry Mysiw, M.D., and Steven Curtis, O.D.; (2) that the ALJ failed to properly evaluate the medical opinion evidence of State agency consultative examiner, psychologist James Spindler, M.S.; and (3) that the ALJ failed to consider whether Plaintiff required the use of an assistive device to ambulate. The Court will consider each contention of error in turn.

**A.     The ALJ properly evaluated the opinions of Plaintiff's treating physicians.**

**1.     Standards for Evaluating Treating Physicians' Opinions**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the

5

objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

6

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 2. Dr. Simensky, M.D.

Dr. Simensky, M.D., completed a Medical Source Statement on August 17, 2015, in which he indicated Plaintiff had "marked" psychological or social impairments, including his ability to complete tasks in a normal work setting, work in cooperation with others, maintain attention and concentration, and perform at expected production levels.[3] (R. 470.) He also opined that Plaintiff would be likely to have 5 or more unscheduled absences from work per month. (*Id.* at 471.)

The ALJ explained that he afforded Dr. Simensky's opinion "some weight" because it is inconsistent with the record as a whole:

---

[3] Although Dr. Simensky submitted other opinions that are part of the record, Plaintiff objects only to the ALJ's consideration of the August 17, 2015 opinion.

7

> Dr. Simensky's other opinions are also given some weight because his opinions are somewhat inconsistent with the evidence of record and he lacks program knowledge consistent with the Social Security program (Exhibits 17F/4–8; 18F; 28F). While he indicates that the claimant has marked limitation in all areas of concentration and persistence, the claimant has testified that he may need to re-read things at times, but that he is able to read and comprehend material. He also indicated that he is able to keep up with TV shows, which shows a less than marked ability to maintain concentration and attention. Further, other psychological and neurological testing showed the claimant to have normal attention and concentration, both via testing and as observed (Exhibits 7F, 9F, 15F).

(R. 603.) The undersigned finds no error with the ALJ's consideration and weighing of Dr. Simensky's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight on the grounds that the opined "marked" impairments in maintaining attention and concentration were inconsistent with Plaintiff's testimony and objective testing that reflected normal concentration and attention. (*See* Psychological Evaluation by Mr. Spindler, finding Plaintiff's intelligence and memory to be "average" and having the mental ability to sustain concentration, attention, and working pace (R. 307–08); Neurobehavioral Status Examination by Dr. Madden, scoring Plaintiff as average on working memory, low-average on speed of information processing, and high average on a variety of attention and concentration tasks (R. 437)). Dr. Simensky's opinion's inconsistency with the record was sufficient reason for the ALJ to decline to give it controlling weight under the treating physician rule.

Plaintiff's objection that the ALJ should not have considered Dr. Simensky's lack of Social Security program knowledge is not well taken. Although Plaintiff contends that relying on a treating physician's lack of program knowledge "runs contrary to the very idea of a treating physician" (Statement of Errors 11, ECF No. 11), the Social Security regulations contemplate that "[a] medical source's familiarity with disability standards may be a factor to consider in evaluating his or her opinion." *Shepherd v. Comm'r of Soc. Sec.*, No. 2:18-CV-417, 2019 WL

8

4593390, at *8 (S.D. Ohio Sept. 23, 2019) (citing 20 C.F.R. § 404.4527(c)(6)). It is true that, "[a]lthough program knowledge is a factor that an ALJ may consider when weighing opinion evidence, it does not swallow the rule that a treating physician's opinion be given controlling weight absent other good reasons." *Downing v. Berryhill*, No. CV 16-10321, 2017 WL 2214591, at *2 (E.D. Mich. Mar. 16, 2017). However, the ALJ gave good reasons for not giving Dr. Simensky's opinion controlling weight when he pointed out inconsistencies with the record. At that point, Dr. Simensky became merely another medical source for the ALJ to consider under 20 C.F.R. § 404.4527(c), and it was no error for the ALJ to point out Dr. Simensky's lack of program knowledge when evaluating his non-controlling opinion.

### 3. Dr. Curtis, O.D.

Dr. Curtis, O.D., completed a Medical Source Statement dated September 19, 2015, and an undated Mental Residual Functional Capacity questionnaire. (R. 445–50.) Dr. Curtis opined that Plaintiff could only frequently lift up to 5 pounds and occasionally lift up to 10 pounds. (*Id.* at 445). He also opined that Plaintiff could stand for only 2 hours total and 20 minutes at a time, walk for 4 hours total and 15 minutes at a time, and sit for 6–8 hours total and for 60 minutes at a time. (*Id.* at 446.) Dr. Curtis concluded that Plaintiff would miss 5 or more days of work per month and that his condition would likely deteriorate under the pressure of full-time employment. (*Id.* at 447.) Dr. Curtis further opined that Plaintiff was markedly to extremely impaired in several areas such as completing tasks in a normal workday, maintaining attention and concentration, performing at expected production levels, behaving predictably, and responding appropriately to changes. (*Id.* at 449.) Finally, Dr. Curtis opined in a letter dated June 22, 2015, that Plaintiff "suffers from chronic vision impairments associated with post-concussive syndrome" and that Plaintiff "has made progress but continues to test below normal in visual-motor skills that he needs to use daily in a work or home environment." (*Id.* at 444.)

9

"As a result," Dr. Curtis stated, "[Plaintiff] suffers from mental and physical fatigue, thus he [is] limited in attention, executive function and reasoning. [Plaintiff] therefore is unable [to] work without restriction of time and activity." (*Id.*)

The ALJ explained that he afforded Dr. Curtis's opinions "some weight" because, as an optometrist, his opinions regarding Plaintiff's physical and mental residual functional capacities are outside his area of expertise; and further, his opinions regarding Plaintiff's visual impairments were not sufficiently specific:

> The opinion of Steven J. Curtis, O.D., the claimant's treating provider, is given some weight because his opinion regarding the claimant's visual limitations is not sufficiently specific, his physical and mental residual functional capacities are outside of his area of expertise and are inconsistent with the evidence, and a determination of who is "disabled" or "unable to work" is an issue that has been reserved to the Commissioner (Exhibit 16F). While he opined that the claimant's visual symptoms significantly interfere with his ability to work, his most recent treatment notes document no physical ocular symptoms, no routine headaches or double vision, no floaters or light flashes, and no blurry or uncomfortable vision (*See* Exhibit 26F/21, 24). Additionally, he remarked that the claimant had only a mild convergence insufficiency as of December 2015 (Exhibit 26F/25). More recent treatment notes indicate that the claimant's visual conditions remained mild and were treated with eyeglasses (Exhibit 31F). He noted he had been working full-time since March and had not had light therapy for approximately two weeks, but was holding steady (Exhibit 31F). He also indicated he felt okay to be up on a ladder. In February 2019, the claimant was noted to be doing very well with his stress level way down (Exhibit 32F/ 14).

(R. 603.) The undersigned finds no error with the ALJ's analysis and weighing of Dr. Curtis's opinion. As an initial matter, Plaintiff does not challenge the ALJ's evaluation of Dr. Curtis's opinions related to Plaintiff's visual impairments. And as noted by the ALJ, an optometrist is not an acceptable medical source as to Plaintiff's exertional and mental RFC. *See* 20 C.F.R. § 404.1502(a)(3) ("licensed optometrists" are "acceptable medical sources" "for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices."); *see also* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues

related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). The ALJ was therefore justified in not crediting Dr. Curtis's opined exertional and mental limitations. Finally, the ALJ was justified in not crediting Dr. Curtis's opinion that "Plaintiff is unable to work without restriction," as the determination of whether Plaintiff is disabled is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."). Accordingly, the undersigned finds that the ALJ's evaluation of Dr. Curtis's opinions are supported by substantial evidence.

4. **Dr. Mysiw, M.D.**

Dr. Mysiw, M.D., completed a Medical Source Statement and a Mental Residual Functional Capacity questionnaire, both dated June 2, 2015. (R. 428–33.) Dr. Mysiw opined that Plaintiff was capable of lifting up to 5 pounds constantly, 10 pounds frequently, and 20 pounds occasionally. (*Id.* at 428.) Dr. Mysiw then opined that Plaintiff could only frequently reach, handle, and finger using his upper extremities. (*Id.* at 429.) Dr. Mysiw also opined that Plaintiff was capable of approximately 7,000 steps per day and could only occasionally engage in postural activities. (*Id.*) Dr. Mysiw opined that Plaintiff would likely miss 5 or more days of work per month due to his diagnosed conditions, and that his condition would likely deteriorate under the pressure of full-time employment. (*Id.* at 430.)

As to Plaintiff's mental RFC, Dr. Mysiw opined that Plaintiff was moderately limited in multiple areas such as working in coordination with others, responding appropriate to coworkers and peers, relating to the general public, performing and completing tasks in a normal workday, and behaving predictably. (*Id.* at 431–32.) Dr. Mysiw also opined that Plaintiff was markedly impaired in several areas including maintaining attention and concentration, performing at

11

expected production levels, responding appropriately to changes, and tolerating customary work pressures. (*Id.* at 432–33.)

The ALJ explained that he afforded Dr. Mysiw's opinions "some weight" because, among other reasons, they were inconsistent with the record as a whole:

> The opinions of the claimant's treating provider, W. Jerry Mysiw, M.D., are given some weight (Exhibits lF, 14F, 24F, 28F). The undersigned notes that the assessment form at Exhibit 14F is not fully completed, it appears to be based on the claimant's subjective complaints, it is inconsistent with the record as a whole, and Dr. Mysiw lacks program knowledge regarding the Social Security program. Dr. Mysiw indicated that the claimant can only take 7,000 steps per day based on his pedometer readings, but that only indicates how many steps the claimant has actually taken and not how many the claimant is capable of taking. Other records show the claimant to have achieved 10,000 steps per day (Exhibit 27F). Additionally, the records show continued improvement (*see e.g.* Exhibits lF, 8F, 24F, 28F, 29F, 31F, 32F). Furthermore, he did not state an opinion as to what length of time the claimant would be able to stand or sit. Dr. Mysiw's other opinions indicating that the claimant is temporarily totally disabled are given partial weight because they are not actual medical source statements, they do not provide an explanation for the opinion or dates for which they are applicable, his own treatment notes actually show significant improvement, and a determination of who is "disabled" or "unable to work" is an issue that has been reserved to the Commissioner (Exhibits lF, 24F, 28F).

(R. 602.) The undersigned finds no error with the ALJ's consideration and weighing of Dr. Mysiw's opinion. The ALJ properly noted that portions of Dr. Mysiw's opinions were inconsistent with the record, *e.g.*, Dr. Mysiw's opinion that Plaintiff was limited to 7,000 steps a day when Plaintiff demonstrated the ability to take 10,000 steps a day elsewhere in the record. (R. 602, citing R. 836.) Further, the ALJ appropriately noted that the 7,000-step figure appeared to be nothing more than a report of what Plaintiff had been doing, not an opinion regarding the most Plaintiff could do, which is the relevant RFC inquiry. Dr. Mysiw's opined limitations were also inconsistent with other treatment notes in the record documenting improvement in Plaintiff's impairments. (R. 602, citing, *e.g.*, R. 229, 315, 324, 327, 521, 529, 840–42, 849, 857, 868, 875.) Moreover, just as with Dr. Simensky, the ALJ appropriately took into consideration Dr. Mysiw's

12

lack of Social Security program knowledge. Although the undersigned does not find support for the ALJ's statement that Dr. Mysiw's opinion "appears to be based on the claimant's subjective complaints," the ALJ gave other good reasons for not giving Dr. Mysiw's opinion controlling weight. Accordingly, the undersigned finds that the ALJ's evaluation of Dr. Mysiw's opinions are supported by substantial evidence.

In sum, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.** **The ALJ properly evaluated the opinions of the consultative examiner.**

Plaintiff asserts that the ALJ improperly failed to incorporate the opinions of consultative examiner, psychologist James Spindler, M.S., into the RFC. Mr. Spindler examined Plaintiff on March 18, 2014, and diagnosed Plaintiff with an unspecified trauma disorder. (R. 307.) Mr. Spindler opined that Plaintiff "appears to have the mental ability to sustain a working pace and to maintain a level of attention and concentration that would be sufficient for most job settings." (*Id.* at 308.) He further stated, "[h]owever until he effectively processes the effects of the trauma he seems likely to have difficulty maintaining employment"; "[o]nce he has effectively processed the effect of the trauma he seems likely to respond appropriately to supervision and to coworkers"; and "[o]nce he has effectively processed the effects of his trauma, it seems likely that he will respond appropriately to routine work pressures." (*Id.*)

The ALJ explained that he gave Mr. Spindler's opinions "some weight" because, while they are "generally consistent" with the record, Mr. Spindler did not provide definitive limitations and or a function-by-function analysis:

> Some weight is given to the opinions of James Spindler, M. S. (Exhibit 7F). In March 2014, Mr. Spindler performed an independent psychological consultative examination and opined that the claimant was able to understand, remember, and carry out instructions in most job settings. He indicated that the claimant appeared to have the mental ability to sustain a working pace and maintain a level of attention

13

> and concentration that would be sufficient in most job settings, but until he effectively processed the effects of the trauma, he seemed likely to have difficulty maintaining employment. He further noted that once the claimant had effectively processed the effects of the trauma he seemed likely to respond appropriately to supervision and to co-workers; and once he had effectively processed the effects of his trauma, it also seemed likely that he would respond appropriately to routine work pressures. While Mr. Spindler's opinions are generally consistent with the evidence of record, the undersigned notes that he did not provide sufficiently specific limitations regarding the claimant's current mental state, nor did he provide a function-by-function analysis. Generally, the records show that the claimant exhibited improvement. Other intellectual testing was generally consistent with that of Mr. Spindler's, showing normal attention and concentration, a cooperative attitude, and some emotional aspect to testing (Exhibits 9F, 15F). The claimant was also noted to have average working memory, with only a mild to moderate deficit in verbal memory. Further, more recent treatment notes document improvement with the claimant denying depression and able to work without cognitive difficulties (Exhibits 28F, 29F, 3lF, 32F). Thus, some weight has been assigned to Mr. Spindler's opinions.

(R. 601–02.) The undersigned finds no error with the ALJ's consideration and weighing of Mr. Spindler's opinions. As a non-treating practitioner, Mr. Spindler's opinion is not entitled to any particular deference. Consultative examiners' opinions must be meaningfully evaluated according to the factors set forth in 20 CFR § 404.1527(c), but an ALJ need not give "an exhaustive factor-by-factor analysis." *Kent v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 643, 650 (S.D. Ohio 2015) (quoting *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011)). Because a consultative examiner usually meets with the claimant only once, they usually do not have an on-going treatment relationship with the claimant to trigger the deference owed to treating physicians. *Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 245–46 (6th Cir. 2018) (the absence of an on-going treatment relationship means "the ALJ is entitled to give less weight to the consultative examiner's opinion") (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (2017)).

Plaintiff argues that, because the ALJ found Mr. Spindler's opinions to be "generally consistent" with the record, he should have incorporated all of Mr. Spindler's opinions when

14

crafting the RCF—namely, that Plaintiff "likely" could not return to work until he "effectively processes the effects of the trauma." However, the ALJ did not adopt Mr. Spindler's opinion, giving it only "some" weight. "An ALJ's decision to give weight to medical opinion evidence does not require the ALJ to incorporate every restriction proposed by the medical source." *Price v. Comm'r of Soc. Sec.*, No. 2:18-CV-128, 2019 WL 396415, at *2 (S.D. Ohio Jan. 31, 2019). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

Further, the ALJ appropriately declined to incorporate Mr. Spindler's opinion as to Plaintiff's "likelihood" of "difficulty" in sustaining employment until "he effectively processes the effects of the trauma" as insufficiently definitive. Mr. Spindler provides no explanation of what he means by "effectively processing trauma," and opinions as to Plaintiff's "likely" capabilities or "difficulty" maintaining employment are too equivocal to be of use to the ALJ in crafting the RFC. *See Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at *10 (M.D. Tenn. Mar. 28, 2017) (an assessment of "difficulty" with an activity "does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation*

*adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible* limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion.").

The undersigned therefore finds the ALJ's consideration of Mr. Spindler's opinions to be supported by substantial evidence and **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

**C.     Any error by the ALJ in failing to consider whether Plaintiff required the use of an assistive device was harmless.**

Plaintiff contends that the ALJ erred in failing to consider whether Plaintiff requires an assistive device to ambulate. Plaintiff was examined by consultative examiner Robert Thompson, M.D., who completed a Medical Source Statement dated December 9, 2015. (R. 486–91.) In answer to the form's question, "[d]oes the individual require the use of a cane to ambulate?", Dr. Thompson checked the box for "yes" and added "occasionally on uneven surfaces." (*Id.* at 487.) Further down on the same page, Dr. Thompson stated that Plaintiff "[r]eports that he needs a cane to walk on uneven surfaces but does not need it on flat surfaces." (*Id.*) Plaintiff does not identify any other evidence in the record related to his need to use a cane for ambulation.

If a cane is not a medically-necessary device, it cannot be considered a restriction or limitation on a claimant's ability to work. *Carreon v. Massanari,* 51 F. App'x 571, 575 (6th Cir. 2002). Social Security Ruling 96-9p instructs as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

16

SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). "[W]here there is conflicting evidence concerning the need for a cane, 'it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.'" *Forester v. Comm'r of Soc. Sec.*, No. 2:16-CV-1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) (quoting *Foreman v. Comm'r of Soc. Sec.*, No. 2:10-cv-1008, 2012 WL 1106257, at *4 (S.D. Ohio Mar. 31, 2012)).

In his decision, the ALJ made no mention of Plaintiff's possible required use of a cane. Yet even if the omission of any cane-related discussion was error, it was harmless error. "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Generally, however, federal courts review decisions of administrative agencies for harmless error. *Rabbers*, 582 F.3d at 654–55. Accordingly, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983).

Even when canes are used pursuant to a prescription from a doctor, the use of a cane need not be incorporated into the RFC unless the Plaintiff can demonstrate it is medically necessary. *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-CV-876, 2019 WL 1146356, at *5 (S.D. Ohio Mar. 13, 2019), *report and recommendation adopted*, (S.D. Ohio Aug. 22, 2019) (affirming ALJ's determination that a cane was not medically necessary despite prescription). Here, although Dr. Thompson "opined" that Plaintiff occasionally required the use of a cane on uneven surfaces, his Medical Source Statement indicates that this opinion was based on Plaintiff's self-report. (R. 487.) Plaintiff's self-report falls short of the "medical documentation establishing the need for a hand-held assistive device" required by SSR 96-9p.

17

Moreover, even if the ALJ had found that Plaintiff occasionally required the use of a cane on uneven surfaces, this would not have altered his RFC. The ALJ limited Plaintiff to sedentary work. (R. 594.) And, as pointed out by the Commissioner, SSR 96-9p states that "if a medically required hand-held assistive is needed only for prolonged ambulation, *walking on uneven terrain*, or ascending or descending slopes, the *unskilled sedentary occupational base will not ordinarily be significantly eroded*." (emphasis added). Indeed, in discussing Dr. Thompson's opinions, the ALJ noted that "[t]he record shows that the claimant has few, if any, objective findings, but has reported limitations consistent with a range of sedentary work." (R. 603–04.) It was therefore unnecessary for the ALJ to specifically discuss Plaintiff's occasional use of a cane on uneven surfaces, because it would not have affected the work Plaintiff could do.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's third contention of error be **OVERRULED**.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in

18

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE